**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| FARHAT CHISHTY, Individually and as | § | |
| Next Friend for her son, HASEEB CHISHTY, | § | |
| and AQUEEL CHISHTY, Individually, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF AGING AND | § | |
| DISABILITY SERVICES; DENTON STATE | § | |
| SCHOOL; JIM SIBLEY, Individually and in | § | |
| his capacity as Superintendent of Denton State | § | |
| School; LAURA BINNION, R.N., Individually, | § | Case No. 4:05-CV-26 |
| and in her capacity as an employee of Denton | § | |
| State School; JENNIFER RUSSELL, R.N., | § | |
| Individually, and in her capacity as an | § | |
| employee of Denton State School; CHUCK | § | |
| BROOKINS, R.N., Individually, and his | § | |
| capacity as an employee of Denton State | § | |
| School; and KEVIN MILLER, Individually | § | |
| and in his capacity as an employee of Denton | § | |
| State School, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

The following motions and responses are pending before the court:

1.    Defendants Jim Sibley, Jennifer Russell, Chuck Brookins and Laura Binnion's motion for summary judgment based on qualified and official immunity and brief in support (docket entry #13);

2.    Defendants Texas Department of Aging and Disability Services, Denton State School and Jim Sibley, Laura Binnion, Jennifer Russell and Chuck Brookins', in their official capacities, motion for summary judgment and brief in support (docket entry #14);

3.     Plaintiffs' response to the motion for partial summary judgment of Defendants Texas Department of Aging and Disability Services, Denton State School, and the individual Defendants sued in their official capacities (docket entry #20);

4.     Plaintiffs' response to the motion for partial summary judgment of the individual Defendants sued in their individual capacities (docket entry #21);

5.     Defendants Texas Department of Aging and Disability Services, Denton State School and Jim Sibley, Laura Binnion, Jennifer Russell and Chuck Brookins', in their individual and official capacities, reply to Plaintiffs' response to motion for summary judgment (docket entry #47);

6.     Plaintiffs' supplemental response to Defendants' motions for partial summary judgment (docket entry #56);

7.     Defendants' supplemental reply to Plaintiffs' response and supplemental response to Defendants' motion for summary judgment (docket entry #68);

8.     Plaintiffs' motion to compel deposition testimony of Shane Scott (docket entry #69); and

9.     Shane Scott's response to Plaintiffs' motion to compel deposition testimony (docket entry #70).

Having considered the Defendants' motions, the Plaintiffs' responses and the Defendants' replies thereto, the court is of the opinion that the Defendants' motions for summary judgment should be granted in part.

## OBJECTIONS

The Defendants object to the May 16, 2005 videotaped sworn statement of Kevin Miller. In the statement, Defendant Miller testified that drug use was rampant at the Denton State School. He further testified that residents were oftentimes subjected to physical abuse by the Denton State School staff. Defendant Miller additionally testified that his supervisor, Defendant Chuck Brookins, engaged in the use of drugs and the abuse of residents. Defendant Miller finally testified that he caused Plaintiff Haseeb Chishty's injuries by repeatedly punching the Plaintiff in the stomach. The

statement was provided in a question and answer format, similar to that of a deposition.  However, only counsel for the Plaintiffs, the videographers and Mr. Miller were present at the time the statement was given.  None of the remaining Defendants were afforded the opportunity to be present. The Plaintiffs provided to the court a copy of the actual videotaped statement as well as a transcription of the same.

The Defendants argue, however, that the sworn statement is improper summary judgment evidence.  Equating the statement to an affidavit, the Defendants contend that the sworn statement fails to meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.

In determining summary judgment motions, the court may only consider competent summary judgment evidence.  Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(e) of the Federal Rules of Civil Procedure further provides that supporting and opposing affidavits

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

The Local Rules for the Eastern District of Texas further provide, in part, as follows:

> As used within this rule, "proper summary judgment evidence" means excerpted copies of pleadings, depositions, answers to interrogatories, admissions, affidavits, and other admissible evidence cited in the motion for summary judgment or the response thereto.

Local Rule CV-56(d).

Of course, a deposition is a discovery device used to preserve sworn testimony.   An "affidavit" is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."   BLACK'S LAW DICTIONARY 62 (8th ed. 2004).   The court notes that the sworn statement does not meet the requirements of either an affidavit or a deposition.

Central to both a deposition and an affidavit is the requirement that the statements be sworn to under oath.   Here, counsel for the Plaintiff administered the following oath to Defendant Miller:

> Q:     Gotcha.  Something I neglected to do before we started, would you – would
>        you be willing to give these statements under oath?
>
> A:     Absolutely.
>
> Q:     Okay.
>
> A:     And we can grandfather that in if you want to, if you want to –
>
> Q:     Well, let me just administer an oath to you.
>
> A:     Okay.  That's fine.
>
> Q:     If you'll raise your right hand, do you swear that the statements you're going
>        to give in this video recorded statements are the truth, and the whole truth so
>        help you God?
>
> A:     Absolutely.
>
> Q:     All right.  Do you understand giving this Statements Under Oath, Kevin, that
>        if you give a contrary statement, it can be used against you?
>
> A:     Absolutely, I understand that.

Videotaped Sworn Statement of Kevin Miller, May 16, 2005 (17:19-25 to 18:1-11).

---

> Q:     Thank you.  And everything that you've told us, Kevin, has been under oath,

that you've sworn to God to tell the truth.  Is that right?

A:       That's correct.

*Id*. at 138:9-12.

Interestingly, however, an attorney licensed in the State of Texas is not authorized to administer oaths.  TEX. GOV'T CODE ANN. § 602.002 (Vernon 1988).  Accordingly, the statement before the court is not a "sworn" statement at all.  It is merely the unsworn words of Defendant Miller.  The statement does not constitute competent summary judgment evidence.[1]

The court notes that "federal law does specifically permit an unsworn alternative to affidavits, . . ." *FCA Investment Co. v. Baycorp Advantage Limited*, 2005 WL 1653056, *1 (S.D. Tex. 2005). "In lieu of an affidavit sworn under oath, federal law allows an 'unsworn declaration, certificate, verification, or statement, in writing, of [a] person which is subscribed by him, as true under penalty of perjury, and dated' to have the same force and effect as an affidavit or other sworn statement." *Id*. at n. 2, quoting 28 U.S.C. § 1746 (remaining citation omitted).  If this unsworn declaration under penalty of perjury is executed within the United States, 28 U.S.C. § 1746 requires that it be substantially in the following form:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).
>
> (Signature)".

---

[1]Counsel for the Plaintiff provided to the court an affidavit establishing that she was present for the entirety of Defendant Miller's statement.  Although Plaintiffs' counsel avers that she was present when Defendant Miller made the statements reflected on the videotapes and that the transcription of the same is accurate, such averments do not change the fact that the statement was not sworn to under oath. Although counsel for the Plaintiffs consistently refers to Defendant Miller's statement as a "sworn" statement, the fact remains that it is not.  However, even if the court were to consider Miller's statement, the court could only consider Miller's statements which were made against his own interests, not any statements made which were made against the other Defendants' interests.

28 U.S.C. § 1746; *see FCA Investment Co.*, 2005 WL at *1, n. 2.  Here, however, the statutory substitute is not at issue.  *See id.* at *1.  Defendant Miller did not sign his statement as required by the statute.

Based on the foregoing, the court sustains the Defendants' objection to Kevin Miller's statement.  Since the statement is not competent summary judgment evidence as contemplated by the Rules, the court will not consider the statement in its decision herein.

## STATEMENTS BEFORE THE COURT

In their supplemental response to the Defendants' motions for summary judgment, the Plaintiffs provided the court with the following additional evidence: (1) Defendant Miller's May 13, 2005 Voluntary Statement to the Vernon Police Department; and (2) Shane Scott's January 11, 2006 oral and videotaped deposition.  The court reviews each in turn.

### 1.      *Miller's Statement*

Three days prior to providing his unsworn videotaped statement, Defendant Miller made a voluntary, written statement to the Vernon Police Department.  In this statement, Defendant Miller admitted using illegal drugs while employed at the Denton State School.  Additionally, Defendant Miller admitted to repeatedly punching Haseeb Chishty in the stomach.  Defendant Miller further stated, in part, the following:

> It is important for me to first say that there is a great deal more to this confession. There were other employees involved with many different incidences that occurred. It is important that the above be told for the safety of the residences [sic] of Denton State School for many other victims that are subjected to abuse like Denton State School.  I would like to have the opportunity to tell that at a later time.

> No one saw the assault other than Haseeb and myself but it was obvious to Shane (another staff member) what I had done.  I also stated verbally that I had hit Haseeb.

Also I need to tell the rest of the <u>systematic torture</u> that happened at DSS (Denton State School).  There is (was) so many acts of torture by me and other staff of DSS toward residents (clients) @ DSS.  Today I just want to hold myself accountable for my actions.

Although this statement is proper summary judgment evidence, it provides little assistance to the court.  The statement certainly creates a fact issue with respect to Defendant Miller's actions.  However, that issue is not before the court at this time.  What is before the court are the actions of Defendant Miller's supervisors.  The statement, however, provides only conclusory allegations with respect to "other employees", "other staff", and "different" instances of abuse.  Defendant Miller did not identify these other employees or describe the different instances of abuse or systematic torture.  In fact, Defendant Miller reserved the right to expound on such issues at a later time.  Without more, Defendant Miller's May 13, 2005 statement is insufficient to create a genuine issue of material fact with respect to the Defendants currently before the court.

## 2.    *Shane Scott's Deposition*

At the final pretrial conference conducted on December 12, 2005, the Plaintiffs requested that the court delay ruling on the Defendants' motions for summary judgment until such time that the Plaintiffs were able to depose Shane Scott.  The court granted the Plaintiffs' request.

Scott's deposition was subsequently taken on January 11, 2006 while Scott was a resident at the House of Isaiah, a drug and alcohol rehabilitation facility.  Scott was previously employed at the Denton State School and worked with Defendant Miller.  Scott testified that he never really had a concern that any of the people that he worked with at the Denton State School could be capable of harming the residents.  Scott Dep. 63:7-14.  He further testified that he never saw Defendant Miller physically abuse Haseeb.  Scott Dep. 18:6-8.  However, Scott testified that at a Halloween

party in 2002, Defendant Miller approached Scott and it appeared that Miller wanted to tell him something but did not. Scott Dep. 39:9-25 to 40:1. At some time, Scott became concerned about Defendant Miller because Miller discontinued using his bipolar medication which made Miller moody and edgy. Scott Dep. 75:12-25 to 76:1-13. Scott testified that he heard rumors sometime after Miller entered drug rehabilitation (December 2002) that Miller had abused Haseeb. Scott Dep. 44:14-25 to 45:1-3.

The court notes that Scott pled the protection of the Fifth Amendment to numerous questions. An example of such questioning is as follows:

> Q:   At any time prior to when you were working in the office, Shane, at Denton State School and you were working in 528, and I'm not asking about you specifically, did you ever observe or know of any employees, be it a supervisor like Mr. Brookins or other direct care aids who used illicit drugs on campus?
>
> MR. JOHNSON: Objection, form.
>
> MR. LE: And I'm going to instruct you not to answer on the grounds it may incriminate you against the Fifth Amendment privilege against self incrimination.
>
> Also on the basis of the Texas Penal Code section 38.171.[2] Do you follow

---

[2]**§38.171. Failure to Report Felony**

(a) A person commits an offense if the person:

> (1) observes the commission of a felony under circumstances in which a reasonable person would believe that an offense had been committed in which serious bodily injury or death may have resulted; and
>
> (2) fails to immediately report the commission of the offense to a peace officer or law enforcement agency under circumstances in which:
>
>> (A) a reasonable person would believe that the commission of the offense had not been reported; and
>>
>> (B) the person could immediately report the commission of the offense without placing

my instruction?

        THE WITNESS: I follow his instruction.

Scott Dep. 26:16-25 to 27:1-4.

The Plaintiffs now request that the court draw an inference against the moving Defendants based on Scott pleading the Fifth Amendment privilege to questions such as the one above. However, as shown by the example above, the questions to which Scott pled the Fifth Amendment privilege are all broad form questions. The court is unable to determine if Scott's responses apply to any of the moving Defendants. Accordingly, there is no inference to be drawn.

Additionally, the Plaintiffs have filed a motion to compel the deposition testimony of Shane Scott. The Plaintiffs seek to compel responses to questions which Scott was instructed not to answer because the questions were allegedly abusive and outside the scope of discovery. As noted previously, the court extended the Plaintiffs additional time beyond the final pretrial conference to take the deposition of Scott. The Plaintiffs took Scott's deposition on January 11, 2006. If the Plaintiffs were of the opinion that Scott's objections to their questions lacked merit, the Plaintiffs should have taken advantage of the court's Discovery Hotline. *See* Local Rule CV-26(e). By so doing, the Plaintiffs could have timely resolved their discovery disputes.

However, not only did the Plaintiffs fail to utilize the Discovery Hotline, the Plaintiffs also delayed in filing their motion to compel. The Plaintiffs did not file their motion to compel until February 21, 2006, well after the close of additional briefing. Accordingly, the court is not inclined

---

himself or herself in danger of suffering serious bodily injury or death.

(b) An offense under this section is a Class A misdemeanor.

to consider reopening discovery in this matter for a second time. The Plaintiffs' motion to compel is denied.

## BACKGROUND

Haseeb Chisthy ("Haseeb") is a 32 year old male currently suffering from a variety of disorders, among which are profound mental retardation, Guillain-Barre Syndrome, pervasive developmental disorder and hyperactivity. Pl. Summ. Judgment Resp., Exh. H, Bates No. 1224. On August 22, 2002, Haseeb was admitted to the Denton State School. Prior to his transfer to the Denton State School, Haseeb was a patient at the MR / MI Unit at the Western State Psychiatric Center in Fort Supply, Oklahoma. Pl. Summ. Judgment Resp., Exh, I. At the time of his admission to the Denton State School, Haseeb had unimpaired mobility and coordination. His health status was considered "mild." Pl. Summ. Judgment Resp., Exh. H, Bates No. 1146.

Haseeb was assigned to live in apartment 528D with seven other residents. Defendants' Mtn. for Summ. Judgment, Exh. A, p. 5. Each apartment consists of a common living area, dining room and kitchen. *Id*. Each resident shares a bedroom with one roommate. *Id*. Three direct care staff members were assigned to 528D on each eight hour shift from 6:00 a.m. to 10:00 p.m. *Id*. Two direct care staff members were on duty from 10:00 p.m. to 6:00 a.m. *Id*. Each shift had a supervisor who supervised the direct care staff. *Id*. The shift supervisors were supervised by a Qualified Mental Retardation Professional ("QMRP"). *Id*. The QMRP worked for the Unit Director who, in turn, worked for the Director of Residential Services. *Id*. The Director of Residential Services reported to the Assistant Superintendent for Programs who then reported to the Superintendent. *Id*. This management and care model was in accordance with the policies and procedures promulgated

by the Texas Department of Aging and Disability Services.[3]  *Id.*

Defendant Kevin Miller ("Miller") was assigned to work the 2:00 p.m. to 10:00 p.m. shift as a direct care worker to assist with Haseeb's care.  Defendant Chuck Brookins ("Brookins") was the residential supervisor for building 528.  Defendants' Mtn. for Summ. Judgment, Exh. C, p. 1. As residential supervisor, Brookins supervised the direct care staff assigned to apartments 528C and 528D and assisted in the daily care of the residents.  *Id.*  Defendant Jennifer Russell ("Russell") was the Qualified Mental Retardation Professional assigned to building 528.  Defendants' Mtn. for Summ. Judgment, Exh. B, p. 1.  Russell supervised the direct care staff, assistant residential supervisors and residential supervisors in the apartments assigned to her.  *Id.*  Russell occasionally participated in resident care.  *Id.*  Defendant James Sibley ("Sibley") was the Superintendent of the Denton State School.  Defendants' Mtn. for Summ. Judgment, Exh. A, p. 2.  Sibley was responsible for the administration and operation of the Denton State School.  *Id.*  Sibley was not involved in the residents' daily care, nor was he involved in Haseeb's care.  *Id.*

Russell hired Miller in September 2001 as a direct care worker.  Defendants' Mtn. for Summ. Judgment, Exh. B, p. 2.  Miller held a Bachelor of Science degree in psychology.  *Id.* at 1.  He had previously worked for the Texas A&M – Commerce Police Department.  *Id.* at 1-2.  Miller submitted to mandatory drug testing which is part of Denton State School's applicant screening process. Defendants' Mtn. for Summ. Judgment, Exh. A, p. 3.  The drug test screens for marijuana, cocaine, amphetamines, opiates and PCP.  *Id.*  Miller's drug test was negative.  Defendants' Mtn. for Summ. Judgment, Exh. B, p. 2.  Miller had no criminal record or history of client abuse.  *Id.*

---

[3]The Texas Department of Aging and Disability Services was created on September 1, 2004 as the successor agency to the Texas Department of Mental Health and Mental Retardation.  Defendants' Mtn. for Summ. Judgment, Exh. A, p. 2.

Miller received the following training:

- A mandatory two week (80 hours) orientation and training called New Employee Orientation. The orientation covered such topics as abuse and neglect. The training also covered the Reasonable Suspicion Policy which provides that should reasonable suspicion exist that an employee possesses illegal drugs or appears to be impaired, the employee must submit to a drug test and / or a search of his property;

- A period of on-the-job training in his assigned unit; and

- Annual refresher training.

Defendants' Mtn. for Summ. Judgment, Exh. A, p. 3-5.

Miller was originally hired to work in apartment 528A on the 6:00 a.m. to 2:00 p.m. shift. Defendants' Mtn. for Summ. Judgment, Exh. B, p. 2. Miller's first supervisor, Joletta Garth, noted in her monthly progress reports that Miller worked well with the residents. *Id*. She further noted that Miller had poor attendance. *Id*. To improve his attendance, Russell transferred Miller to work in apartment 528D on the 2:00 p.m. to 10:00 p.m. shift. *Id*. Upon transfer, Brookins became Miller's supervisor. *Id*. Brookins reported that Miller worked well with the residents. Defendants' Mtn. for Summ. Judgment, Exh. C, p. 1.

On the evening of September 26, 2002, approximately one month after arriving at the Denton State School, Haseeb developed a fever. Pl. Summ. Judgment Resp., Exh. H, Bates No. 1225. Early in the morning on September 27, 2002, a large bruise was discovered on Haseeb's lower abdomen. *Id*. His pulse and respiratory rates were elevated. *Id*. Haseeb was subsequently transferred to the infirmary at the Denton State School. *Id*. Haseeb was ultimately transferred to the emergency room at Denton Community Hospital where he underwent emergency surgery for a perforated small bowel. *Id*. Following surgery, Haseeb developed Guillain-Barre Syndrome and was placed on a ventilator. *Id*. After months of medical and rehabilitative care, Haseeb returned to the Denton State School

infirmary on March 10, 2003.  *Id*.  Haseeb is now non-ambulatory and his coordination is disabling.

*Id*.  Haseeb's health status is classified as "severe."  *Id*. at 1229.

All allegations of abuse or neglect are reported to the Texas Department of Family and Protective Services.  Defendants' Mtn. for Summ. Judgment, Exh. A, p. 6.  Additionally, all allegations involving a serious injury or death of a client are reported to the Texas Department of Aging and Disability Services regulatory office within 24 hours.  *Id*.  Both agencies (or their 2002 equivalents) were notified on September 27, 2002 about Haseeb's injuries.  *Id*.  The Texas Department of Family and Protective Services conducted an investigation and initially concluded that no abuse had occurred.  *Id*.

In December 2002, the Denton State School received a report that Miller had admitted to striking a resident at the Denton State School.  Defendants' Mtn. for Summ. Judgment, Exh. A, p. 5.  On January 27, 2003, the Denton State School received additional information from an ex-employee that an employee admitted that he had hit Haseeb in the stomach approximately one month prior to Haseeb's hospitalization. Pl. Summ. Judgment Resp., Exh. J.  This information was subsequently forwarded to the appropriate agencies for further investigation.  Defendants' Mtn. for Summ. Judgment, Exh. A, p. 6.  Miller's May 16, 2005 statement was forwarded to the investigative agencies as well.

On August 25, 2005, the Texas Department of Aging and Disability Services issued a letter stating its final determination in this abuse investigation.  The letter provides as follows:

> On June 20, 2005, you were contacted by the facility regarding an allegation of abuse that was reported to the Department of Family and Protective Services (DFPS) Investigator on June 20, 2005, involving Hasib Shishty [sic]. The allegation reported was that staff physically abused Hasib [sic] by punching and kicking him on the stomach.  An investigation was completed by that agency and was reviewed by

administrative staff.   The Department of Family and Protective Services has confirmed the allegation.

Pl. Summ. Judgment Resp., Exh. F.   The Texas Department of Family and Protective Services confirmed the following findings:

> It is alleged that on 09/26/02, around 10:00 AM, Kevin Miller physically abused Hasib Shishty [sic] by punching and kicking him on the stomach more than twelve times, resulting in serious injuries.  NOTE: This incident has been investigated on two previous occasions.

*Id.*

Neither Russell nor Brookins observed Miller engage in any activity that might be considered abuse or neglect of a resident.  Defendants' Mtn. for Summ. Judgment, Exh. B and C.  Additionally, neither Russell nor Brookins received any reports about Miller engaging in abuse or neglect during his active tenure at Denton State School.  *Id.*  Although Russell was aware that Miller was being treated for depression, such treatment did not prevent Miller from performing his job duties and interacting well with the residents.  Defendants' Mtn. for Summ. Judgment, Exh. B, p. 2. Miller's last day of work at Denton State School was November 18, 2002.  Defendants' Mtn. for Summ. Judgment, Exh. C, p. 1.

On December 8, 2004, the Plaintiffs filed their original petition in the 367th Judicial District Court of Denton County, Texas.  The Defendants subsequently removed the Plaintiffs' lawsuit to this court on January 21, 2005.  In their original petition, the Plaintiffs allege state law causes of action for negligent hiring, negligent supervision and negligent retention.  Additionally, the Plaintiffs allege that the Defendants violated their constitutional rights under 42 U.S.C. § 1983.  More specifically, the Plaintiffs allege that the Defendants placed Haseeb in a state-created danger which was the proximate cause of his injuries.  Additionally, the Plaintiffs allege that Sibley, Binnion,

Russell and Brookins, both in their individual and official capacities as Miller's supervisors, acted with deliberate indifference to Miller's conduct.  In response, the Defendants have asserted the defenses of sovereign immunity, official immunity and qualified immunity.  The Defendants further assert that neither the individual Defendants sued in their official capacities nor the state entities are "persons" for 42 U.S.C. § 1983 purposes.  Finally, the Defendants argue that the Plaintiffs' claims are barred by limitations.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material.  *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See id*. at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.

1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

### 1.   STIPULATIONS

The Plaintiffs stipulate in their written response that they no longer seek redress under § 1983 against the Texas Department of Aging and Disablity Services or the Denton State School. Accordingly, the Plaintiffs' § 1983 claims against the Texas Department of Aging and Disablity Services and the Denton State School are hereby dismissed.

### 2.   STATUTE OF LIMITATIONS

The Defendants argue that the Plaintiffs' claims are barred by the applicable statute of limitations.  The statute of limitations for negligence claims and § 1983 claims in Texas is two years. *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n. 5 (5th Cir. 1995); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003.  The Defendants contend that the Plaintiffs' cause of action accrued no later than September 27, 2002.  Since the Plaintiffs filed their lawsuit more than two years later on December 8, 2004, the Plaintiffs' claims are barred according to the Defendants.

The Plaintiffs argue that (1) since Haseeb is mentally retarded, he is a person of unsound mind entitled to a tolling of limitations pursuant to § 16.001(a)(2) of the Texas Civil Practice and Remedies Code; and (2) since the Defendants fraudulently concealed the cause and nature of

Haseeb's injuries, the Plaintiffs are entitled to a tolling of the statute of limitations.  Since the court agrees with the Plaintiffs that TEX. CIV. PRAC. & REM. CODE ANN § 16.001(b) tolls the applicable statute of limitations, it is not necessary for the court to reach the Plaintiffs' fraudulent concealment argument.

Federal courts give effect to the forum state's tolling provisions.  *Slack v. Carpenter*, 7 F.3d 418, 419 (5th Cir. 1993).  Section 16.001 of the Texas Civil Practice and Remedies Code provides that "[i]f a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period."  TEX. CIV. PRAC. & REM. CODE ANN § 16.001(b).  A person is under a legal disability if he is of unsound mind.  TEX. CIV. PRAC. & REM. CODE ANN § 16.001(a)(2).

Here, it is undisputed that Haseeb was of unsound mind at the time of the incident made the basis of this lawsuit and remains of unsound mind today.  Accordingly, the statute of limitations was tolled from the date of injury to the filing of the lawsuit.  *See generally Ruiz v. Conoco, Inc.*, 868 S.W.2d, 752, 754-56 (Tex. 1993).

### 3.     42 U.S.C. § 1983 CAUSE OF ACTION

As noted previously, the Plaintiffs allege that the individual Defendants, both in their official and individual capacities as Miller's supervisors, acted with deliberate indifference.  The Plaintiffs allege that the individual Defendants provided inadequate supervision and training of Miller which resulted in Miller's physical abuse of Haseeb.  Additionally, the Plaintiffs allege that the Defendants placed Haseeb in a state-created danger.  The Defendants, in their individual capacities, have asserted the defense of qualified immunity.

"The doctrine of qualified immunity seeks to strike a balance between competing social

objectives, providing breathing space for the vigorous exercise of official authority, while at the same time allowing a possibility of redress for victims of officials' abuses." *Hernandez ex rel. Hernandez v. Texas Dep't of Protective and Regulatory Services*, 380 F.3d 872, 879 (5th Cir. 2004) (citations omitted).  "Therefore, as a general rule, against claims arising under federal law, government officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Id.*, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (remaining citation omitted).

"The qualified immunity analysis is a two-step inquiry." *Id.*  "First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right." *Id.* (citation omitted).  "Second, if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.* (citation omitted).  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Id.* (citation omitted).

"Although qualified immunity is a two-step analysis, the threshold issue presented by any case arising under Section 1983 is whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution." *Id.* (citation omitted).  "It is well-established that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws." *Id.* (citation omitted).

Here, the summary judgment evidence reveals that Miller deprived Haseeb of his constitutional right to personal security.  However, the issue before the court is whether the

deprivation of a constitutional right to personal security can be ascribed to Sibley, Russell and Brookins.  *See id.* at 880.

The Plaintiffs seek to hold Sibley, Russell and Brookins liable for the deprivation of Haseeb's constitutional right to personal security under two different theories.  First, the Plaintiffs argue that Sibley, Russell and Brookins should be held liable as Miller's supervisors.  "Supervisory officials cannot be held liable under section 1983 for the actions of subordinates, such as [Miller], on any theory of vicarious or *respondeat superior* liability."  *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted).  "Rather, Plaintiffs must show that the conduct of the supervisors denied [Haseeb] his constitutional rights."  *Id.* (citations omitted).  "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"  *Id.*, quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (remaining citations omitted).

Second, the Plaintiffs seek to establish liability based on a state-created danger theory.[4]  The Plaintiffs argue that the individual Defendants created or participated in a drug culture at the Denton State School which led to Haseeb's abuse.  "In order to recover under the state-created danger theory, . . . a plaintiff must demonstrate that (1) the state actors created or increased the danger to the plaintiff, and (2) the state actors acted with deliberate indifference."  *Hernandez*, 380 F.3d at 880 n.

---

[4]The Fifth Circuit has not yet determined whether a state official has a duty to protect individuals from state-created dangers.  *Hernandez*, 380 F.3d at 880 n. 1.

1 (citation omitted).[5]

Accordingly, each theory of liability hinges on a finding that the Defendants acted with deliberate indifference. "To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *Id.* at 880 (citations omitted). Deliberate indifference is determined by a subjective standard. *Id.* at 881. The state actor "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation omitted). The Fifth Circuit has "interpreted the test of deliberate indifference as a significantly high burden for plaintiffs to overcome." *Hernandez*, 380 F.3d at 882 (citation omitted). "To establish deliberate indifference, the plaintiff must demonstrate culpability beyond mere negligence or even gross negligence." *Id.* (citation omitted). The Plaintiffs, however, have failed to raise a genuine issue of material fact with respect to the question of whether the Defendants were deliberately indifferent.

The Plaintiffs argue that the individual Defendants were aware of the rampant drug culture at the Denton State School. The Plaintiffs further argue that the individual Defendants were aware that the Denton State School employees were abusing residents. As such, the Plaintiffs argue that the individual Defendants could have drawn the inference that such behaviors created a substantial risk of danger to the residents at the Denton State School and to Haseeb. The Plaintiffs, however, have failed to offer any summary judgment evidence in support of their argument. Although there is summary judgment evidence that Miller abused Haseeb (Pl. Summ. Judgment Resp., Exh. F), there is no summary judgment evidence concerning a pattern or history of drug use and resident

---

[5]"Because [the court] ultimately conclude[s] that a showing of deliberate indifference has not been made, even assuming a theory of liability for state-created danger the plaintiffs would not be entitled to any relief." *Hernandez*, 380 F.3d at 880 n. 1.

abuse at the Denton State School.[6]  To the contrary, both Russell and Brookins averred that they were not aware of the drug culture to which the Plaintiffs refer.  Moreover, the Plaintiffs have presented no summary judgment evidence that the training of employees was so inadequate as to be obviously likely to result in a constitutional violation.  Accordingly, the Plaintiffs have failed to raise a genuine issue of material fact that the individual Defendants' actions constituted deliberate indifference.  Sibley, Russell and Brookins are, therefore, entitled to qualified immunity.

The Plaintiffs further argue that they may maintain a § 1983 cause of action against the individual Defendants in their official capacities under the state-created danger theory of liability.  However, since the court has determined that the Plaintiffs failed to establish the deliberate indifference prong of the state-created danger theory, the Plaintiffs may not maintain a § 1983 cause of action against the individual Defendants in their official capacities.

The Plaintiffs additionally argue that Brookins and Russell directly violated Haseeb's constitutional rights by acting to conceal the true cause of Haseeb's injuries.[7]  The Plaintiffs also argue that Sibley directly violated Haseeb's constitutional rights by acting to conceal the true cause of Haseeb's injuries.  The Plaintiffs argue that because Sibley contested the findings of the Texas Department of Family and Protective Services, he must be trying to conceal the finding that Miller abused Haseeb.  The Plaintiffs have failed to show by way of competent summary judgment evidence how Brookins, Russell or Sibley's actions violated Haseeb's constitutional rights.

---

[6]Under the Plaintiffs' supervisory theory of liability, in order to satisfy the deliberate indifference prong, the Plaintiffs "must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Estate of Davis*, 406 F.3d at 381 (citation omitted).

[7]The court notes that Brookins testified that he thought Haseeb's injuries stemmed from a seat belt.  Pl. Summ. Judgment Resp., Exh. D, 30-34.

Accordingly, the Plaintiffs' claims must fail.

## CONCLUSION

The court concludes that Defendants Jim Sibley, Jennifer Russell, Chuck Brookins and Laura Binnion's motion for summary judgment based on qualified and official immunity and brief in support (docket entry #13) and Defendants Texas Department of Aging and Disability Services, Denton State School and Jim Sibley, Laura Binnion, Jennifer Russell and Chuck Brookins', in their official capacities, motion for summary judgment and brief in support (docket entry #14) are **GRANTED IN PART**.   The Plaintiffs' 42 U.S.C. § 1983 claims against all Defendants are **DISMISSED WITH PREJUDICE**.   The Plaintiffs' motion to compel deposition testimony of Shane Scott (docket entry #69) is hereby **DENIED**.

This court declines to exercise supplemental jurisdiction over the remaining state law claims now that all of the federal claims against the moving Defendants have been dismissed.  28 U.S.C. § 1367(c)(3).   It is therefore ordered that the remaining state law claims against the moving Defendants are hereby **REMANDED** to the 367th Judicial District Court of Denton County, Texas. *See Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("... if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well); *Reese v. Anderson*, 926 F.2d 494, 501 n. 9 (5th Cir. 1991) ("[s]uch dismissal is perhaps the practice in this circuit . . .).[8]

The court notes that the Plaintiffs' claims against Defendant Kevin Miller remain pending before the court.  Defendant Miller was served with a copy of the instant action on January 20, 2006. As of this date, Defendant Miller has yet to enter an appearance in this case.  The Plaintiffs, however,

_____

[8]An "Agreed Order of Dismissal of Defendant Laura Binion, R.N." (docket entry #60) was entered on January 31, 2006.  In the order, the court dismissed all of the Plaintiffs' claims and causes of action against Defendant Laura Binion, R.N. without prejudice.

have not yet moved for a default judgment against Defendant Miller.  If the Plaintiffs intend to so

move, they must do so by May 15, 2006 at 5:00 p.m.  If the Plaintiffs do not timely move for a

default judgment against Defendant Kevin Miller, the court will dismiss all of the Plaintiffs' claims

against Kevin Miller without prejudice for failure to prosecute.


**SIGNED this the 3rd day of May, 2006.**


RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE